Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| MUNICIPIO AUTÓNOMO DE SAN JUAN<br><br>Recurrido<br><br>v.<br><br>JOSÉ FIOL, ARCADIA COLÓN Y OTROS<br><br>Parte con interés<br><br>**EZEQUIEL MANUEL PUENTE CARRASCO Y DULCE I. CARRASCO REYES**<br><br>Peticionarios | TA2026CE00718 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2025CV09055<br><br>Sobre: Expropiación Forzosa |

Panel integrado por su presidente, el Juez Bonilla Ortiz, la Jueza Martínez Cordero y el Juez Robles Adorno.

*Martínez Cordero, jueza ponente*

### RESOLUCIÓN

En San Juan, Puerto Rico, a 8 de junio de 2026.

Comparece Ezquiel Modesto Puente Carrasco y Dulce Ilenia Carrasco Reyes mediante un recurso de *certiorari* para solicitarnos la revisión de tres (3) dictámenes emitidos por el Tribunal de Primera Instancia, Sala Superior de San Juan.

El *primero* fue la *Orden* emitida el 4 de mayo de 2026, notificada el 5 de mayo de 2026.[1] Sobre esta *Orden,* se presentó una solicitud de reconsideración,[2] la cual fue atendida mediante *Resolución* emitida y notificada el 15 de mayo de 2026.[3] Por otro lado, el *segundo* fue la *Resolución* emitida el 1 de junio de 2026,[4] notificada al día siguiente, resuelta en virtud de una solicitud de

---

[1] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI), a las Entradas Núm. 40 y 41.
[2] SUMAC TPI, a la Entrada Núm. 47.
[3] *Íd.,* a la Entrada Núm. 52. Aun cuando fue declarada *No Ha Lugar,* el foro de instancia aclaró si procedía o no el descubrimiento de prueba solicitado por la parte peticionaria.
[4] *Íd.,* a la Entrada Núm. 57.

reconsideración o clarificación incoada por la parte peticionaria el 29 de mayo de 2026.[5] El *tercero* y último fue una segunda *Resolución* emitida el 1 de junio de 2026, notificada el 2 de junio de 2026.[6]

Por los fundamentos que expondremos, se *deniega* la expedición del auto de *Certiorari.*

I

El caso del título inició, el 7 de octubre de 2025, cuando el Municipio, representado por su alcalde, el Hon. Miguel Romero Lugo, interpuso una *Petición de expropiación forzosa* contra José Fiol y su esposa Arcadia Colón, cada uno por sí y en representación de la sociedad legal de gananciales compuesta por ambos; el Banco de San Juan (Banco) y el Centro de Recaudaciones de Ingresos Municipales (CRIM) (en conjunto, partes con interés).[7] Esbozó que interesaba la propiedad localizada en la Calle Manuel Corchado número 160 en Santurce, San Juan, Puerto Rico, tras haber sido declarada como estorbo público, el 6 de febrero de 2025, en el Caso Número 23OP-64068QE-SA, mediante el procedimiento correspondiente del Municipio. Acotó que la compensación justa y razonable a la cual podían tener interés las partes era la suma de $21,000.00 dólares, a la cual había que deducirle la suma de $51,644.21 dólares, por concepto de deudas de contribuciones sobre la propiedad inmueble, así como $5,706.00 dólares por concepto de multas y gastos incurridos por el Municipio en el procedimiento de declaración de estorbo público. Dado a lo anterior, sostuvo que la compensación que debía pagarse era $0.00 dólares.

A tenor, solicitó al tribunal de instancia que declarara *Ha Lugar* su petición, y, en consecuencia: (i) dispusiera que desde la radicación, el Municipio quedara investido con título de pleno

---

[5] SUMAC TPI, a la Entrada Núm. 53.
[6] *Íd.,* a las Entradas Núm. 59-61.
[7] *Íd.,* a la Entrada Núm. 1.

dominio sobre la propiedad en cuestión descrita en el Exhibit A; (ii) ordenara a que las partes con interés que tuviesen la posesión de la propiedad entregaran o transfirieran la misma al Municipio; (iii) determinara la justa y razonable compensación por la propiedad y las personas con derecho a la misma, así como su distribución; (iv) reservara y entregara al Departamento de Hacienda y/o CRIM cualquier cantidad que pueda adeudársele por concepto de contribuciones, en el caso de que aplicara; (v) ordenara al Registrador de la Propiedad correspondiente a inscribir a favor del Municipio a título de dominio absoluto, la propiedad objeto de esta acción, libre de toda clase de carga, gravámenes, menciones, anotaciones, reservas o defectos de cualquier naturaleza; y (vi) emitiera cualquier otro pronunciamiento que en derecho procediera.

De ahí, el foro de instancia expidió el emplazamiento contra las partes con interés.[8]

Subsiguientemente, el 29 de octubre de 2025, la parte peticionaria compareció por derecho propio mediante *Moción de nulidad y/o suspensión del procedimiento de expropiación forzosa.*[9] Al día siguiente, la parte peticionaria presentó una *Moción informativa y de corrección* para aclarar un error de forma en su escrito anterior.[10] El 31 de octubre de 2025, la parte peticionaria compareció nuevamente mediante *Moción suplementaria urgente para ordenar status quo y suspensión (Regla 49.2*).[11] Luego, el 3 de noviembre de 2025, la parte peticionaria compareció mediante *Moción urgente de preservación de evidencia y para [que] orden[e] la producción del expediente de estorbo público y su esi* [sic].[12]

Mediante *Orden*, notificada el 3 de noviembre de 2025, el foro de instancia dispuso conceder un término al Municipio para exponer

---

[8] SUMAC TPI, a las Entradas Núm. 2 y 3.
[9] *Íd.*, a la Entrada Núm. 4.
[10] *Íd.*, a la Entrada Núm. 6.
[11] *Íd.*, a la Entrada Núm. 7.
[12] *Id.*, a la Entrada Núm. 8.

su posición.[13] Luego de varios incidentes procesales y, en el interín, el 25 de noviembre de 2025, la parte peticionaria compareció mediante *Moción de comparecencia e intervención como parte demandada indispensable y solicitud de suspensión de cualquier orden de entrega de posesión.*[14] Alegó ser ocupante de la propiedad objeto de este procedimiento y como tal debía considerarse como una parte con interés puesto a que el dictamen que, en su día, se dictara afectaría de forma directa su hogar, su estabilidad familiar, las condiciones de vida de menores de edad que residían con este y la cabida del terreno que ocupaba. A tenor, solicitó ser identificado como parte con interés en este caso. En igual fecha, presentó una *Contestación a la demanda de expropiación forzosa, defensas afirmativas, impugnación a la declaración de estorbo público y solicitud de vista evidenciaria.*[15]

Por su parte, el 28 de noviembre de 2025, el Municipio presentó su *Moción en oposición a "Moción de nulidad y/o suspensión del procedimiento de expropiación forzosa".*[16] Adujo que las partes con alegado interés, ya habían litigado el asunto alegando usucapión, y la primera instancia judicial dispuso mediante *Sentencia* emitida el 8 de abril de 2025, que estas no cumplían con los requisitos mínimos para consolidar tal acción, particularmente en cuanto al término prescriptivo y a la ausencia de posesión legítima en concepto de dueños. Incluso, acentuó que dicha determinación se había llevado al foro apelativo por las referidas partes mediante un recurso de *certiorari* en el alfanumérico TA2025CE00187, quien denegó la expedición del auto. Añadió que, posteriormente, las partes recurrieron ante el Tribunal Supremo en el CC-2025-0697. Ahora bien, acotó que, lo anterior, no tenía el

---

[13] SUMAC TPI, a la Entrada Núm. 9.
[14] *Íd.*, a la Entrada Núm. 17.
[15] *Íd.*, a la Entrada Núm. 18.
[16] *Íd.*, a la Entrada Núm. 19.

efecto de suspender el presente procedimiento de expropiación, ya que a la fecha no existía una orden de paralización que limitara la jurisdicción del foro primario. Peticionó que se declarara *No Ha Lugar* la solicitud de nulidad o suspensión del procedimiento de expropiación forzosa; que se tomara conocimiento del alfanumérico SJ2024CV07876 en el que se adjudicó la usucapión alegada, y se ordenara la continuación inmediata de los procedimientos en este caso, con cualquier otro pronunciamiento que en derecho procediera.

En reacción, mediante escrito, presentado el 1 de diciembre de 2025, la parte peticionaria replicó.[17] De ahí, mediante *Orden*, notificada el 1 de diciembre de 2025, el tribunal de instancia dispuso que el asunto quedaba sometido y que no se aceptarían otros escritos con relación a los asuntos ya planteados.[18]

De ahí, mediante *Orden*, emitida y notificada el 23 de diciembre de 2025, el tribunal de instancia tomó conocimiento de que la parte peticionaria se encontraba en un litigio activo sobre la presunta adquisición prescriptiva de la propiedad objeto de esta controversia en el alfanumérico SJ2024CV07876, ante el foro intermedio en el alfanumérico TA2025CE00187, y ante el Alto Foro en el CC-2025-0697. Dispuso declarar *No Ha Lugar*, por ahora, a la parte peticionaria como una parte con interés, puesto a que no estaba claro si ostentaban legitimación activa, y ordenó la paralización de los procedimientos. Dispuso que el caso se reactivaría cuando se adjudicara con finalidad lo resuelto en el SJ2024CV07876, puesto a que se encontraba en revisión judicial.

Conviene mencionar, que el 28 de enero de 2026, el Municipio interpuso una *Moción informativa, en solicitud de emplazamiento por*

---

[17] SUMAC TPI, a la Entrada Núm. 20.
[18] *Íd.*, a las Entradas Núm. 21 y 22.

*edicto y en solicitud de autorización para enmendar el Exhibit A*.[19] Explicó que, mediante Declaración Jurada suscrita por el emplazador, Manuel A. Repollet Meléndez, se evidenció haberse hecho gestiones para diligenciar personalmente a Jose Fiol, su esposa, Arcadia Colón, y al Banco de San Juan, pero no se pudo dar con el paradero de estos. Así, pues, solicitó al tribunal enmendar el Exhibit A para incluir como demandados y partes con interés a las Sucesiones de Jose Fiol y Arcadia Colón, compuesta por Fulano y Fulana de Tal, así como al señor Johnny Méndez, quien expreso residir en la propiedad desde el 2022, al momento en el cual el emplazador visitó la residencia. Asimismo, peticionó que se le permitiera emplazar a todas las partes antes descritas por edicto, por desconocer su paradero. En reacción, el 29 de enero de 2026, la parte peticionaria presentó un escrito informativo y para oponerse a lo solicitado por el Municipio.[20] Sobre este particular, mediante *Resolución,* emitida y notificada el 30 de enero de 2026, el foro de instancia dispuso declarar *No Ha Lugar* lo solicitado por el Municipio, manteniendo así la paralización de los procedimientos.[21]

Luego de varios incidentes procesales innecesarios reseñar, el 19 de marzo de 2026, compareció el Municipio mediante *Moción informativa y en solicitud de orden.*[22] Alegó que, mediante *Resolución* del 13 de febrero de 2026, el Alto Foro denegó reconsiderar la moción de reconsideración a la denegatoria de expedición de auto de *certiorari* en el recurso CC-2025-0697. A tenor, razonó que la parte peticionaria, quien rogaba ser nombrada parte con interés, carecía de interés propietario alguno sobre el inmueble objeto de la expropiación en este caso. Dado a lo anterior, solicitó se levantara la paralización impuesta en el caso y se procediera a la continuación

---

[19] SUMAC TPI, a la Entrada Núm. 26.
[20] *Íd.*, a la Entrada Núm. 27.
[21] *Íd.*, a la Entrada Núm. 28.
[22] *Íd.*, a la Entrada Núm. 30.

de los procedimientos. El 20 de marzo de 2026, la parte peticionaria presentó su escrito en oposición.[23]

En respuesta, mediante *Orden*, emitida el 26 de marzo de 2026, notificada al día siguiente, el tribunal *a quo* ordenó la continuación de los procedimientos; declaró *No Ha Lugar* la solicitud de enmienda al Exhibit A, presentado el 28 de enero de 2026, por el Municipio,[24] y le ordenó a mostrar causa por la cual la parte peticionaria no debían ser incluidos como partes con interés en capacidad de ocupantes. Por otro lado, también le ordenó aclarar cierta discrepancia sobre el nombre Jonny Méndez y/o Johnny Jorge Gil, así como el carácter de su interés.

En cumplimiento con lo ordenado, el 8 de abril de 2026, compareció el Municipio mediante *Moción en cumplimiento de orden, en solicitud de emplazamiento por edicto y en solicitud de autorización para enmendar el Exhibit A*.[25] Esbozó que no tenían reparo a que se incluyera a la parte peticionaria como partes con interés en calidad de supuestos ocupantes, y aclaró lo requerido por el foro de instancia. Solicitó se diera por cumplida la *Orden* y se expidieran los emplazamientos por edicto. En reacción, mediante escrito, presentado el 13 de abril de 2026, la parte peticionaria se opuso.[26]

En respuesta, mediante *Resolución*, emitida y notificada el 15 de abril de 2026, el tribunal de instancia ordenó nuevamente al Municipio a aclarar lo relacionado a los nombres y a presentar un nuevo proyecto de enmienda al Exhibit A, identificando el carácter de cada parte con interés.[27] Por otro lado, declaró *No Ha Lugar* el escrito presentado por la parte peticionaria en lo que respecta a los

---

[23] SUMAC TPI, a la Entrada Núm. 31.
[24] *Íd.*, a la Entrada Núm. 33.
[25] *Íd.*, a la Entrada Núm. 34.
[26] *Íd.*, a la Entrada Núm. 35.
[27] *Íd.*, a la Entrada Núm. 36.

incisos (C), (F) y (G) de la página 4 del escrito.[28]. Por último, mantuvo en suspenso la expedición de los emplazamientos por edicto hasta tanto el Municipio cumpliese con lo ordenado.

Así las cosas, el 27 de abril de 2026, el Municipio presentó una *Moción en cumplimiento de orden, en solicitud de emplazamiento por edicto y en solicitud de autorización para enmendar el Exhibit A*.[29] Respecto a la persona identificada como Johnny Méndez, acentuó que el nombre Johnny Jorge Gil no surgió de la Declaración Jurada del emplazador ni de los escritos previamente presentados por el Municipio, si no que surgió de una moción presentada por la parte peticionaria el día 20 de marzo de 2026, en el cual indicó que la persona vinculada a la cadena posesoria era el señor Johnny Jorge Gil, a quien describió como amigo de la familia. No obstante, lo anterior, manifestó que incluyó a ambas personas como posibles ocupantes y/o personas con alegado interés en el inmueble en el Exhibit A enmendado. A tenor, solicitó que se expidieran emplazamientos tanto a favor de Johnny Méndez como de Johnny Jorge Gil. Acompañó el proyecto enmendado en cuanto Exhibit A. En reacción, la parte peticionaria se opuso.[30] Esbozó que la respuesta del Municipio no resolvió la discrepancia en cuanto a si Johnny Méndez y Johnny Jorge Gil eran la misma persona o personas distintas. Peticionó que se mantuviera en suspenso la expedición de los emplazamientos hasta tanto el Municipio cumpliera de forma completa y específica con la *Orden* de 15 de abril de 2026.

En respuesta, mediante *Resolución y Orden* emitida el 4 de mayo de 2026, notificada al día siguiente, el tribunal de instancia dio por enmendado el Exhibit A, según presentado, y ordenó al

---

[28] SUMAC TPI, a la Entrada Núm. 36, pág. 2.
[29] *Íd.*, a la Entrada Núm. 38.
[30] *Íd.*, a la Entrada Núm. 39.

Registrador de la Propiedad a calificar la propiedad según descrita en el antedicho Exhibit A.[31] Dispuso que esta *Resolución* era complementaria a cualquiera otra dictada previamente por el Tribunal, siempre y cuando no confligieran entre sí.

Consecuentemente, ese mismo 4 de mayo, notificado al día siguiente, el foro *a quo* emitió *Orden de edicto* para José Fiol, Arcadia Colón y la sociedad legal de gananciales compuesta por ambos; el Banco de San Juan, y las Sucesiones de José Fiol y Arcadia Colón, compuestas por Fulano y Fulana de Tal.[32]

De ahí, el 5 de mayo de 2026, el foro de instancia notificó la expedición de los correspondientes emplazamientos por edicto.[33]

Entretanto, el 8 de mayo de 2026, la parte peticionaria interpuso una *Moción urgente de reconsideración parcial y/o aclaración de orden de 4 de mayo de 2026; solicitud de status quo posesorio; solicitud de término para contestar Exhibit "A" enmendado y presentar defensas bajo las Reglas 58.5 y 58.6; y solicitud de vista evidenciaria limitada.*[34] En resumido, solicitó la reconsideración de la orden descrita, así como remedios en torno a lo resuelto en cuanto al Exhibit A y una solicitud de vista evidenciaria.

En igual fecha, presentó *Moción informativa acreditando notificación de primer requerimiento de producción de documentos al Municipio Autónomo de San Juan conforme a la Regla 31 de Procedimiento Civil.*[35] En su escrito, acreditó al foro primario haber notificado un primer requerimiento de producción de documentos a la parte recurrida, entiéndase, haber notificado un descubrimiento de prueba. Solicitó al tribunal de instancia que tomara conocimiento. En respuesta, el 11 de mayo de 2026, el Municipio

---

[31] SUMAC TPI, a las Entradas Núm. 40 y 41.
[32] *Íd.*, a la Entrada Núm. 42.
[33] *Íd.*, a las Entradas Núm. 43-46.
[34] *Íd.*, a la Entrada Núm. 47.
[35] *Íd.*, a la Entrada Núm. 48.

presentó una *Moción informativa.*[36] Expresó que recibió el requerimiento de producción de documentos notificado por la parte peticionaria, que presentó objeciones parciales al mismo y que produciría únicamente aquellos documentos pertinentes dentro del presente procedimiento de expropiación forzosa.

Entonces, mediante escrito presentado al día siguiente, la parte peticionaria se opuso.[37] Solicitó, en esencia, que se ordenara al Municipio a certificar cierta información relacionada al expediente administrativo del caso; que produjera un índice de privilegio documento por documento; ordenara una vista sobre descubrimiento de prueba de persistir la controversia, y dispusiera que no se emitiría ni ejecutaría mandamiento relacionado a la propiedad en controversia hasta que se atendiera razonablemente el descubrimiento de prueba relacionado al expediente administrativo, la justa compensación, la utilidad pública, cabida, entre otras detalles.

En respuesta, mediante *Resolución* emitida y notificada el 15 de mayo de 2026, el tribunal de instancia, en consideración a los escritos presentados en el SUMAC TPI, a las Entradas Núm. 47, 48 y 50, declaró *No Ha Lugar* los remedios solicitados por la parte peticionaria por vía de reconsideración.[38] No obstante, reconoció necesario aclarar sus pronunciamientos de la *Resolución y Orden* emitida el 4 de mayo de 2026, y notificada al día siguiente, en lo relativo al descubrimiento de prueba. Concluyó que la participación de la parte peticionaria en el descubrimiento de prueba era limitada puesto a que estos no contaban con legitimación activa para impugnar la justa compensación y que el tribunal de instancia carecía de jurisdicción sobre los asuntos administrativos,

---

[36] SUMAC TPI, a la Entrada Núm. 49.
[37] *Íd.*, a la Entrada Núm. 50.
[38] *Íd.*, a la Entrada Núm. 52.

particularmente aquellos de naturaleza sustantiva. A tenor, reconsideró parcialmente el antedicho dictamen y dispuso que la parte peticionaria no tenía derecho a realizar un descubrimiento de prueba.

En desacuerdo, el 29 de mayo de 2026, la parte peticionaria presentó una *Moción urgente de reconsideración parcial y/o clarificación sobre producción documental mínima no duplicativa, suspensión de entrega material y preservación de controversia constitucional sobre fin público, debido proceso y posible uso pretextual del poder de expropiación.*[39] En esencia, solicitó que se reconsiderara lo dispuesto en torno a que no le asistía derecho a realizar descubrimiento de prueba. Peticionó que se reconsiderara lo actuado.

Por su parte, en esa misma fecha, el Municipio instó una *Moción en solicitud de resolución de investidura de título y mandamiento.*[40] Esbozó que, desde el 7 de octubre de 2025, se presentó la petición de autos y que, en esa misma fecha, se solicitó se emitiera dictamen sobre investidura de título y mandamiento de forma tal que se pudiese proceder a presentar una instancia en el Registro de la Propiedad. A tenor solicitaron se emitiera la correspondiente resolución. En reacción, mediante escrito presentado el 1 de junio de 2026, la parte peticionaria se opuso.[41] Alegó, en síntesis, que cualquier consideración sobre investidura o mandamiento debía quedar en suspenso hasta tanto se atendiera la solicitud de reconsideración o se celebrara una vista. Solicitó que se denegara lo solicitado por el Municipio.

En respuesta, en consideración a los escritos presentados en el SUMAC TPI, a las Entradas Núm. 53 y 55, la primera instancia

---

[39] SUMAC TPI, a la Entrada Núm. 53.
[40] *Íd.*, a la Entrada Núm. 54.
[41] *Íd.*, a la Entrada Núm. 55.

judicial declaró *No Ha Lugar* la solicitud de reconsideración incoada por la parte peticionaria. Dispuso, además, que no procedía suspender la entrega material de la propiedad y/o denegar la solicitud del Municipio para emitir la resolución sobre investidura.

Por otro lado, con relación al escrito presentado en el SUMAC TPI, a la Entrada Núm. 54, mediante *Orden* emitida el 1 de junio de 2026, notificada al día siguiente, el foro *a quo* ordenó la expedición del mandamiento solicitado por el Municipio.[42] De ahí, mediante *Resolución* emitida el 1 de junio de 2026, notificada al día siguiente, el foro de instancia emitió el decreto de investidura de la propiedad a favor del Municipio.[43] Subsiguientemente, en igual fecha, el tribunal *a quo* procedió a expedir el correspondiente *Mandamiento*.[44]

Insatisfecha, el 4 de junio de 2026, compareció la parte peticionaria mediante un recurso de *certiorari* en el cual esbozó los siguientes tres (3) señalamientos de error:

> PRIMER ERROR: Erró el Tribunal de Primera Instancia al concluir que no podía examinar defectos de notificación, debido proceso y final firmeza de la declaración administrativa de estorbo público, aun cuando dicha declaración es fundamento indispensable de la expropiación, investidura, mandamiento y entrega material.

> SEGUNDO ERROR: Erró el Tribunal de Primera Instancia al negar toda producción documental bajo la premisa de que los ocupantes no podían impugnar justa compensación, cuando la producción solicitada era limitada, no duplicativa y dirigida a una controversia de umbral sobre notificación, ocupación conocida, diligencia razonable y eficacia administrativa.

> TERCER ERROR: Erró el Tribunal de Primera Instancia al emitir investidura, mandamiento, inscripción registral y entrega material dentro de treinta (30) días sin preservar el status quo mientras existían controversias constitucionales serias sobre debido proceso, fin público/pretexto, notificación y posible falta de eficacia de la declaración de estorbo público frente a ocupantes conocidos.

Junto a su escrito, la parte peticionaria interpuso una solicitud para litigar como indigente, la cual hemos acordado declarar *Ha Lugar*. Por otro lado, también presentó una solicitud

---

[42] SUMAC TPI, a la Entrada Núm. 58.
[43] *Íd.,* a las Entradas Núm. 59 y 60.
[44] *Íd.,* a la Entrada Núm. 61.

para que se paralizaran los procedimientos ante el foro de instancia, la cual disponemos declarar *No Ha Lugar*.

Conforme a la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, este Tribunal tiene "la facultad de prescindir de términos no jurisdiccionales, escritos, notificaciones o procedimientos específicos en cualquier caso ante su consideración, con el propósito de lograr su más justo y eficiente despacho".[45] En consideración a lo anterior, luego de haber examinado la totalidad de los autos ante nos, hemos colegido eximir a la parte recurrida de presentar escrito en oposición al recurso de *certiorari* ante nos.

II

## A. Expedición del Recurso de *Certiorari*

Los recursos de *Certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de las Reglas de Procedimiento Civil.[46] Esta Regla limita la autoridad y el alcance de la facultad revisora de este Tribunal mediante el recurso de *Certiorari* sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. La Regla lee como sigue:

> El recurso de Certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de Certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[47]

> [...].[48]

---

[45] *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág.15, 215 DPR __ (2025).
[46] 32 LPRA Ap. V, R. 52.1.
[47] *Íd.*
[48] *Íd.*

Por su parte, la Regla 52.2 (b) dispone sobre los términos y efectos de la presentación de un recurso de *Certiorari* que:

> Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia o al Tribunal Supremo para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones en recursos discrecionales o para revisar cualquier resolución interlocutoria del Tribunal de Apelaciones deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari*.

[...].[49]

Establecido lo anterior, precisa señalar que el recurso de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[50] A diferencia del recurso de apelación, el auto de *certiorari* es de carácter discrecional.[51] La discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[52] A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[53] Por otra parte, la Regla 40 del Reglamento del Tribunal de Apelaciones esgrime que el Tribunal deberá considerar los siguientes criterios para expedir un auto de *Certiorari:*

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

---

[49] 32 LPRA Ap. V, R. 52.1.
[50] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023)*; 800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020).
[51] *Rivera Figueroa v. Joes's European Shop*, 183 DPR 580, 596 (2011).
[52] *Mun. de Caguas v. JRO Construction, Inc.* 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013).
[53] *SLG Zapata-Rivera v. J.F. Montalvo,* supra, 435.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. [54]

De otro lado, el Tribunal Supremo de Puerto ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[55] Quiérase decir, no hemos de interferir con los Tribunales de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[56]

Finalmente, advertimos que la denegatoria a expedir un recurso discrecional no implica la ausencia de error en el dictamen cuya revisión se solicitó, como tampoco constituye una adjudicación en sus méritos. Meramente, responde a la facultad discrecional del foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia.[57]

III

En el presente recurso, la parte peticionaria esgrime tres (3) señalamientos de error en los que muestra su inconformidad con los procedimientos llevados a cabo en su contra en la primera instancia judicial. Mediante el *primer* señalamiento, plantea que el tribunal *a*

---

[54] Regla 40 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025).
[55] *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994).
[56] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).
[57] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008)

*quo* incidió al negarse a examinar los defectos de notificación y debido proceso traídas a su consideración, así como las alegaciones de falta de eficacia de la declaración de estorbo público. Por otra parte, en su *segundo* señalamiento de error, aduce que el referido foro falló, también, al negar el descubrimiento de prueba. Finalmente, en su *tercer* señalamiento de error, arguye que incidió el Tribunal al declarar expropiada la propiedad en cuestión, investir el título en el Municipio, así como mandar la entrega material de inmueble en treinta (30) días y ordenar la inscripción del inmueble a favor del Municipio.

Según reseñamos, el c*ertiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior.[58] A esos efectos, la naturaleza discrecional del recurso de *certiorari* queda enmarcada dentro de la normativa que le concede deferencia de las actuaciones de los Tribunales de Primera Instancia, de cuyas determinaciones se presume su corrección. Sin embargo, esta Regla no opera en el vacío, tiene que anclarse en una de las razones de peso que establece la Regla 40 del Reglamento del Tribunal de Apelaciones,[59] así como en lo dispuesto por la Regla 52.1 de Procedimiento Civil.[60]

Tras evaluar minuciosamente el recurso presentado por la parte peticionaria, es nuestra apreciación que no se configuran ninguna de las instancias que justificaría la expedición del auto de *certiorari* al amparo de las Regla 52.1 de Procedimiento Civil,[61] ni de la Regla 40 del Reglamento del Tribunal de Apelaciones.[62] Los señalamientos de error y los fundamentos aducidos en la petición presentada no logran activar nuestra función discrecional en el caso de autos. Además, razonamos que la parte peticionaria no nos ha

---

[58] *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).
[59] *In re Aprob. Enmdas. Reglamento TA*, supra, a las págs. 59-60.
[60] 32 LPRA Ap. V, R. 52.1.
[61] *Íd.*
[62] *In re Aprob. Enmdas. Reglamento TA*, supra, a las págs. 59-60.

persuadido de que, al aplicar la norma de abstención apelativa conforme al asunto planteado, constituirá un rotundo fracaso de la justicia.

Por todo lo antes mencionado, no atisbamos razón para intervenir con la determinación recurrida.

IV

Por los fundamentos que anteceden, se *deniega* la expedición del auto de *Certiorari* y, en consecuencia, se declara *No Ha Lugar* la solicitud en auxilio de jurisdicción.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones